UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

IULIANA BONDAR p.k.a YULIANA
BONDAR,

    **Plaintiff,**

 - against -

LASPLASH COSMETICS a.k.a.
SPLASH COSMETICS, JON DAVLER,
INC., DAVID BYUN, and DAVID BYUN
CREATIVE, INC.

    **Defendants.**

------------------------------------------------- X



**OPINION AND ORDER**

**12 Civ. 1417 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

   Plaintiff Iuliana Bondar brings this action against LASplash

Cosmetics ("LASplash"), Jon Davler, Inc. ("Davler"), David Byun ("Byun"), and

David Byun Creative, Inc. ("Byun Creative").[1]  Bondar asserts five causes of

---

[1]  The Fourth Amended Complaint ("Compl.") alleges that "[t]his court has
original jurisdiction over this action under 28 U.S.C. §[§] 1331, 1332 and 1338,
and [15] U.S.C. § 1121, and has jurisdiction over the state law claims pursuant to
28 U.S.C. § 1367(a)."  Compl. ¶ 2.  The Complaint reveals that complete diversity
is lacking.  *Compare* Compl. ¶ 5 (alleging that Bondar is a citizen of New York)
*with* Compl. ¶ 10 (alleging that Byun Creative, one of the defendants, is a New
York corporation).  However, jurisdiction over the Lanham Act claim exists under

action: (1) unfair competition and false designation of origin under the Lanham Act; (2) unfair competition under New York law; (3) unjust enrichment under New York law; (4) violation of the New York Civil Rights Law ("NYCRL") Sections 50 and 51; and (5) fraudulent misrepresentation (against Byun only).  Defendants move for judgment on the pleadings on all claims under Federal Rule of Civil Procedure 12(c).  Additionally, Defendants move to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in the event that Bondar's Lanham Act claims are dismissed.  For the reasons that follow, Defendants' judgment on the pleadings is granted in part and denied in part, and defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

## II.    BACKGROUND[2]

### A.    Facts

Bondar is a fashion model residing in New York City.[3]  She has appeared in fashion magazines, advertising campaigns, and runways across the

---

15 U.S.C. § 1121(a), and jurisdiction over the state law claims exists under 28 U.S.C. § 1367(a).

[2]     The facts stated below are drawn from the Fourth Amended Complaint, the Amended Verified Answer of David Byun and David Byun Creative, Inc., to the Fourth Amended Complaint ("Byun Answer"); LASplash's Verified Answer With Defenses and Crossclaims ("LASplash Answer"); and the exhibits annexed thereto.

[3]     *See* Compl. ¶¶ 5-6.

world, walking for luminaries such as Donna Karan, Marc Jacobs, and Vera Wang, and appearing in publications such as Italian Vogue.[4]  The Complaint alleges that she is "well known."[5]

Defendant LASplash is a division of Davler, a California corporation with its principal place of business in California.[6]  Collectively, Davler and LASplash are engaged in the business of designing and manufacturing cosmetics, which are sold domestically and internationally.[7]  In the United States, LASplash's cosmetics are sold primarily in drug stores.[8]  Byun is a fashion photographer based in New York, and Byun Creative is a New York corporation that allegedly acts as his alter-ego.[9]

On or around January 4, 2010, Byun, on behalf of Byun Creative, contacted David Kim, of Bondar's management agency Major Models, to arrange a photo shoot.[10]  Byun stated that the shoot was a "really small make up job for a

---

[4]     *See id.* ¶ 6.

[5]     *Id.*

[6]     *See id.* ¶ 7.

[7]     *See id.* ¶ 8.

[8]     *See id.* ¶ 16 n.2.

[9]     *See id.* ¶¶ 9-11.

[10]    *See id.* ¶ 12.

3

friend of mine" consisting solely of a test for a product.[11]  Byun's Answer alleges that Byun contacted Kim via e-mail on January 4, 2010, and that they had the following exchange:

> **[Byun to Kim]**:
> I would need to do a really small make up job for a friend of mine. I don't think I can hire a model that belongs to an agency. [S]ince it's international usage for [one] year for only $1500
> do you know any models that[] [are] good but [don't] really have [] representation? [S]ince it's beauty I just need a good face.
>
> [L]ooking forward to hearing back from you.
>
> **[Kim's response to Byun]**:
> No worries. Of course I can help. Is it full usage for [one] year? Can I ask what the brand is? [M]aybe one of the girls we have really needs money and would do it.
>
> **[Byun response to Kim]**:
> yes
> it's
> http://www.lasplashcosmetics.com/
>
> **[Kim's 01/05/10 Response to Byun]**
> I have good news. She will do it because its you and because I said it would be a great thing for her and you to work together again.[12]

---

[11]     *See id.* ¶ 13.

[12]     Byun Answer ¶ 13 (emphasis added).  *See* Byun-Kim E-Mails, Ex. A to Byun's Answer, at 1-5.

On January 11, 2010, Bondar did the photo shoot with Byun at George Brown Studio, in Manhattan (the "Photo Shoot").[13]  Per the call sheet, Bondar was paid fifteen-hundred dollars for the Photo Shoot.[14]  She never signed a release in connection with the Photo Shoot, and she alleges that she would not have agreed to be "the face" of LASplash.[15]  Subsequently, images from the Photo Shoot were used by LASplash and Davler in an advertising campaign for LASplash cosmetics.

The Complaint alleges that Byun and Byun Creative sold Bondar's images to LASplash and Davler for commercial advertising use, without release or authorization, in order to avoid paying the customary rate for a high-fashion model of Bondar's caliber.[16]  The Complaint further alleges that Bondar's career has been damaged because she cannot pursue modeling contracts that require exclusivity, and because her brand has been tarnished.[17]

---

[13]     *See* Compl. ¶ 14.

[14]     *See* Call Sheet, Ex. A to Compl.

[15]     *See* Compl. ¶¶ 15-16.

[16]     *See id.* ¶¶ 19-20.

[17]     *See id.* ¶ 22.

5

LASplash's Answer alleges that LASplash used Bondar's image in four nationwide advertisements for three different types of products, namely lip gloss, eyeliner, and eye shadow. [18]  These products were offered for sale in New York at least as early as 2010, and continued to be offered for sale afterwards.[19] Beginning in 2010, LASplash also used Bondar's on in-store displays promoting its lip gloss and eyeliners in various ULTA Beauty stores in New York.[20] However, the Complaint alleges that "[Within the year of Bondar filing her complaint] [d]efendants . . . have featured Bondar's image for the first time to promote new products and merchandise at trade shows, promotional events and at

---

[18]    *See* LASplash Answer ¶ 42.

[19]    *See id*; 9/10 InStyle Ad, Ex. A to LASplash Answer, at 1-2 (containing the cover page of an issue of InStyle magazine published in September 2010, and an advertisement for LASplash cosmetics featuring Bondar's image allegedly drawn from that magazine); 10/10 Nylon Ad, Ex. B to LASplash Answer, at 1-2 (containing the cover page of an issue of Nylon magazine published in October 2010, and an advertisement for LASplash cosmetics featuring Bondar's image allegedly drawn from that magazine); 11/10 Nylon Ad, Ex. C to LASplash Answer, at 1-2 (containing the cover page of an issue of Nylon magazine published in November 2010, and an advertisement for LASplash cosmetics featuring Bondar's image allegedly drawn from that magazine); 2/11 Nylon Ad, Ex. D to LASplash Answer, at 1-2 (containing the cover page of an issue of Nylon magazine published in February 2011, and an advertisement for LASplash cosmetics featuring Bondar's image allegedly drawn from that magazine).

[20]    *See id*; ULTA Sell Sheet, Ex. E to LASplash Answer (allegedly depicting a promotional display featuring Bondar's image that was placed into various ULTA stores in 2010).

retail outlets in the State of New York . . . ."[21]  Affixed to the Complaint are images purportedly showing that Bondar's face was used in connection with a New York promotion for LASplash's new product "Enlightened Cream Shadow Base" on March 28, 2011.[22]

As to the Lanham Act and unfair competition claims, the Complaint alleges that defendants' conduct was willful, knowing, and/or reckless, and that LASplash's use of Bondar's images in its advertising campaign misrepresents to the general public that Bondar endorses LASplash, creating a likelihood of confusion by consumers.[23]  As to the unjust enrichment claim, the Complaint alleges that defendants obtained a pecuniary benefit from Bondar's likeness without her knowledge or consent.[24]  As to the NYCRL claim, the Complaint alleges that defendants, without Bondar's consent, misappropriated her likeness for commercial purposes, and "within [a] year of Bondar filing her complaint, have featured Bondar's image for the first time to promote new products . . . ."[25]

---

[21]    Compl. ¶ 42.

[22]    *See id*. ¶ 42; Social Media Promotion, Ex. B to Compl., at 7.

[23]    *See id*. ¶¶  24-26; 30-33.

[24]    *See id*. ¶ 36.

[25]    *Id*. ¶ 42.

Finally, as to the fraudulent misrepresentation claim (directed solely at Byun), the Complaint alleges that Byun's alleged statement that the Photo Shoot was a "'really small make up job for a friend of mine' consisting solely of testing for a product" was false when made, and that Byun knew it was false when it was made.[26]

## III.   LEGAL STANDARD

### A.   Judgment on the Pleadings Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'"[27]

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."[28]   In deciding a motion to dismiss pursuant to Rule 12(b)(6), the

---

[26]      *Id*. ¶ 49.  *See also id.* ¶¶  46-49.

[27]      *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).

[28]      *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

8

court "must accept all non-conclusory factual allegations [in the complaint] as true and draw all reasonable inferences in the plaintiff's favor."[29]

The court evaluates the sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in *Ashcroft v. Iqbal*.[30]  Under the first prong, a court "'can . . . identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[31]  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[32]  Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[33]  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[29]   *Simms v. City of New York*, No. 11 Civ. 4568, 2012 WL 1701356, at *1 (2d Cir. May 16, 2012) (citing *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008)).

[30]   556 U.S. 662, 678-79 (2009).

[31]   *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[32]   *Iqbal*, 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[33]   *Id.* at 679.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

defendant is liable for the misconduct alleged."[34]  Plausibility "is not akin to a

probability requirement;" rather, plausibility requires "more than a sheer

possibility that a defendant has acted unlawfully."[35]

      The Federal Rules of Civil Procedure create a heightened pleading

standard for fraud.  Rule 9(b) requires that the circumstances constituting fraud be

alleged with particularity, although "[m]alice, intent, knowledge, and other

conditions of a person's mind may be alleged generally."  "To satisfy this

heightened pleading standard when asserting a claim of fraudulent

misrepresentation, a plaintiff must identify: (1) specific statements that plaintiff

contends were fraudulent; (2) the speaker; (3) where and when the statements were

made; and (4) why the statements were fraudulent."[36]

### B.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

#### 1.   Bases for Jurisdiction

---

[34]   *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

[35]   *Id.* (quotation marks omitted).

[36]   *Soroof Trading Dev. Co., Ltd. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 513 (S.D.N.Y. 2012) (citing, *inter alia*, *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)).

A federal district court may exercise jurisdiction only if so authorized by the Constitution and by statute.[37]  The Constitution extends the federal judicial power to, *inter alia*, all cases arising under the Constitution, laws, and treaties of the United States, and to cases between citizens of different states.[38]  28 U.S.C. §§ 1331 and 1332 extend this grant to the federal district courts, with some limitations (*viz.*, establishing an amount in controversy and complete diversity requirement in diversity cases).[39]

28 U.S.C. § 1338(a) ("Section 1338") provides federal district courts with "original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks[,]" and exclusive jurisdiction with respect to "patents, plant variety protection, or

---

[37]     *See* U.S. Const. art. III, § 1 ("The judicial Power of the United States shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.").  *See also Exxon Mobil Corp. v. Allapattah Servs., Inc.* 545 U.S. 546, 552 (2005) ("The district courts of the United States, as we have said many times, are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute." (quotation marks and citation omitted)).

[38]     *See* U.S. Const. art. III, § 2.

[39]     Under 28 U.S.C. § 1331, district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  Under 28 U.S.C. § 1332, district courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states . . . ."

copyrights."  Section 1338(b) grants federal district courts original jurisdiction over "any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws."  Finally, 28 U.S.C. § 1367(a) permits district courts to exercise supplemental jurisdiction over "claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  A district court may decline to exercise such jurisdiction when it has dismissed all claims over which it has original jurisdiction.[40]

### 2.    Standard for Evaluating a 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a claim when a federal court lacks subject matter jurisdiction, "the statutory or constitutional power to adjudicate [a claim]."[41]  The proponent of jurisdiction (normally the plaintiff) bears the burden of establishing subject matter jurisdiction

---

[40]    *See id.* § 1367(c)(3).

[41]    *Diagnostic Cardioline Monitoring of N.Y., Inc. v. Leavitt*, 171 Fed. App'x 374, 375 (2d Cir. 2006).

by a preponderance of the evidence.[42]  A federal court may only exercise

jurisdiction over live cases and controversies.[43]

   In considering a motion to dismiss for lack of subject matter

jurisdiction, "'the court must take all facts alleged in the complaint as true and

draw all reasonable inferences in favor of plaintiff.'"[44]  However, "'jurisdiction

must be shown affirmatively, and that showing is not made by drawing from the

pleadings inferences favorable to the party asserting it.'"[45]  In fact, "where

jurisdictional facts are placed in dispute, the court has the power and obligation to

decide issues of fact by reference to evidence outside the pleadings, such as

---

[42] *See Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002).  *See also Goonewardena v. N.Y.*, No. 05 Civ. 8554, 2007 WL 510097, at *6 (S.D.N.Y. Feb. 14, 2007) ("[T]he burden of demonstrating that the court has subject matter jurisdiction over the case falls on the plaintiff[,] as it is the plaintiff who seeks to invoke the court's jurisdiction.").

[43] *See Van Wie v. Pataki*, 267 F.3d 109, 113 (2d Cir. 2001) (citation omitted).

[44] *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)).

[45] *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).  *Accord London v. Polishbook*, 189 F.3d 196, 199 (2d Cir. 1999) (citations omitted) ("[I]t is the affirmative burden of the party invoking [federal subject matter] jurisdiction . . . to proffer the necessary factual predicate [—] not just an allegation in a complaint [—] to support jurisdiction.").

affidavits."[46]  "In deciding the motion, the court 'may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits.'"[47]

### C.    Leave to Amend

Whether to permit a plaintiff to amend its complaint is a matter committed to a court's "sound discretion."[48]  Rule 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires."  "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."[49]  In particular, it is the usual practice to grant at least one chance to plead fraud with greater specificity when a complaint is dismissed under Rule

---

[46]    *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999).

[47]    *Mosdos Chofetz Claim, Inc. v. Village of Wesley Hills*, 701 F. Supp. 2d 568, 580–81 (S.D.N.Y. 2010) (alteration in original) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)).

[48]    *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

[49]    *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

9(b).[50]  Leave to amend should be denied, however, where the proposed

amendment would be futile.[51]

## IV.    APPLICABLE LAW

### A.    False Endorsement Under Lanham Act § 43(a) (15 U.S.C. § 1125(a))

The Lanham Act provides:

(1)    Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A)    is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.[52]

"The elements of a false endorsement claim under the Lanham Act are

that the defendant, (1) in commerce, (2) made a false or misleading representation

of fact (3) in connection with goods or services (4) that is likely to cause consumer

---

[50]    *See ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

[51]    *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002).

[52]    15 U.S.C. § 1125(a).

confusion as to the origin, sponsorship, or approval of the goods or services."[53]

Courts in this Circuit have recognized that celebrities have a trademark-like

interest in their name, likeness, and persona that may be vindicated through a false

endorsement claim under the Lanham Act.[54]

      The likelihood of confusion inquiry turns on whether "there is any

likelihood that an appreciable number of ordinarily prudent purchasers are likely to

be misled, or indeed simply confused, as to the source of the goods in question."[55]

"A consumer need not believe that the owner of the mark actually produced the

---

[53]    *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 455 (S.D.N.Y. 2008) (citations omitted).

[54]    *See Allen v. National Video, Inc.,* 610 F. Supp. 612, 625-26 (S.D.N.Y.1985) (granting plaintiff, noted film director and actor Woody Allen, summary judgment on his false endorsement claim**)**. *See also Albert Furst von Thurn und Taxis v. Karl Prince von Thurn und Taxis*, No. 04 Civ. 6107, 2006 WL 2289847, at *11 (S.D.N.Y. Aug. 08, 2006) ("In reading the Complaint in the light most favorable to Plaintiff, it appears to the Court that he has sufficiently alleged a claim for false endorsement under § 43(a) of the Lanham Act, based on the celebrity status of Plaintiff"). *Cf.* McCarthy on Trademarks and Unfair Competition § 28:15 (4th ed. 2010) ("Some courts have held that in the context of § 43(a)(1)(A), a celebrity persona or identity is a kind of 'trademark' which is infringed by a false endorsement."). *But see Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56, 62 (2d Cir. 2001) (holding that the signature performance of a recording artist is not accorded trademark-like protection under the Lanham Act).

[55]    *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 584 (2d Cir. 1990) (quotation marks and citations omitted). *Accord Albert v. Apex Fitness, Inc.*, No. 97 Civ. 1151, 1997 WL 323899, at *1 (S.D.N.Y. June 13, 1997) ("Essential to [a false endorsement] claim . . . is a likelihood that the relevant audience will be misled into believing that the plaintiff endorsed the defendant's product or service.").

item and placed it on the market in order to satisfy § 43(a)'s confusion

requirement.  The public's belief that the mark's owner sponsored or otherwise

approved the use of the trademark satisfies the confusion requirement."[56]  Although

consumer confusion is normally a question of fact, claims "may be dismissed as a

matter of law where the court is satisfied that the products or marks are so

dissimilar that no question of fact is presented."[57]

> Generally speaking, establishing a likelihood of confusion is the

plaintiff's burden;[58] the defendant need not disprove it.[59]  In determining whether

there is a likelihood of confusion, courts in this Circuit apply an eight-factor test

---

[56]   *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 109 (2d Cir. 2010)
(quotation marks and citations omitted).

[57]   *Pirone*, 894 F.2d at 584.  *Accord Pelton v. Rexall Sundown, Inc.*, No. 99 Civ.
4342, 2001 WL 327164, at *4 (S.D.N.Y. Apr. 4, 2001) (citing *Pirone*, and granting
defendant summary judgment on plaintiff's false endorsement claim when "[a]n
ordinary consumer would view [the p]laintiff's image in a swimsuit on the label
not as an indication of sponsorship, but as a reminder of the benefits of taking [the
allegedly falsely endorsed product]").

[58]   *See Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867,
871 (2d Cir. 1986).

[59]   *See KP Permanent Make-up, Inc. v. Lasting Impression I, Inc.*, 543 U.S.
111, 121 (2004).

derived from *Polaroid Corp. v. Polarad Elec. Corp.*[60]  This test has been used,

with modifications, to examine claims of celebrity false endorsement.[61]

## B.    Unfair Competition Under New York Law

The elements of an unfair competition claim under New York law are

identical to the elements of an unfair competition claim under the Lanham Act

(which in turn mirror the elements of a false endorsement claim), with two

exceptions.  *First*, the plaintiff must show "*either* actual confusion *or* a likelihood

of confusion . . . ."[62]  *Second*, the plaintiff must demonstrate "'some showing of

---

[60]    287 F.2d 492, 495 (2d Cir. 1961).  *See Starbucks Corp. v. Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009) (discussing the *Polaroid* factors).  The *Polaroid* factors include: (1) strength of the plaintiff's mark; (2) degree of similarity between plaintiff's and defendant's marks; (3) the competitive proximity of the products; (4) the likelihood that either owner will bridge the gap; (5) the sophistication of the buyers; (6) the quality of defendant's product; (7) actual confusion; and (8) the existence of bad faith.  *See id.*  The above list is non-exhaustive, and no factor is dispositive.  *See Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 743 (2d Cir. 1998).  Instead, the factors are intended to act "as a useful guide" in determining if there exists a likelihood of confusion.  *Lois Sportswear*, 799 F.2d at 872.

[61]    *See Allen*, 610 F. Supp. at 627 (applying the *Polaroid* factors to a celebrity false endorsement case).

[62]    *Sly Magazine, LLC v. Weider Publ'ns L.L.C*, 346 Fed. App'x 721, 723 (2d Cir. 2009) (emphasis added) (citing *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34–35 (2d Cir. 1995)).  *Accord Forschner Grp., Inc. v. Arrow Trading Co.*, 124 F.3d 402, 408 (2d Cir.1997).

bad faith' on the part of the defendants."[63]  "The inquiry into willfulness or bad faith considers whether the defendant adopted its mark with the intention of capitalizing on the plaintiff's reputation and goodwill and on any confusion between [its] and the senior user's product."[64]

### C.    Unjust Enrichment Under New York Law

Under New York law, the elements of an unjust enrichment claim are that: "(1) the defendant benefitted; (2) at the plaintiff's expense; and (3) equity and good conscience require restitution."[65]  The NYCRL provides the exclusive remedy for "all common law claims [right to privacy claims] based on unauthorized use of name, image, or personality, including unjust enrichment claims."[66]  Stated differently, unjust enrichment claims based on the unauthorized use of a person's image are preempted by the NYCRL.

---

[63]   *Sly Magazine, LLC*, 346 Fed. App'x at 723 (quoting *Jeffrey Milstein, Inc.*, 58 F.3d at 34-35).

[64]   *Lopez v. Gap, Inc.*, No. 11 Civ. 3185, 2012 WL 3186546, at *15 (S.D.N.Y. Aug. 2, 2012) (quotation marks omitted).

[65]   *Federal Treasury Enter. Sojuzplodoimport v. Spirits Intern. N.V.*, 400 Fed. App'x 611, 613 (2d Cir. 2010).

[66]   *Zoll v. Ruder Finn, Inc.*, No. 02 Civ. 3652, 2004 WL 42260, at *4 (S.D.N.Y. Jan. 7, 2004) (citations omitted) (dismissing model's unjust enrichment claim as preempted).  *Accord Krupnik v. NBC Universal, Inc.*, No. 103249/10,  2010 WL 9013658, at *8 (Sup. Ct. N.Y. Co. June 29, 2010) (dismissing as preempted plaintiff's unjust enrichment claim grounded on misappropriation of her image).

**D.     Right to Privacy Under NYCRL §§ 50-51**

NYCRL § 51 provides that:

> Any person whose . . . picture . . . is used within this state for
> advertising purposes or for the purposes of trade without the
> written consent first obtained as above provided may maintain an
> equitable action in the supreme court of this state against the
> person, firm or corporation so using his . . . picture . . . to prevent
> and restrain the use thereof; and may also sue and recover
> damages for any injuries sustained by reason of such use and if the
> defendant shall have knowingly used such person's . . . picture
> . . . in such manner as is forbidden or declared to be unlawful by
> section fifty of this article . . . .

NYCRL § 50 forbids the "use[] for advertising purposes, or for the purposes of

trade, . . . the [use of] . . . picture of any living person without having first

obtained the written consent of such person . . . ."

Together, these sections create a private right of action (a "Section 51

claim") for the use of a living person's picture for advertising or trade purposes

without that person's written consent.  The elements of such action are: "(i) usage

of plaintiff's . . . picture . . . (ii) within the State of New York, (iii) for purposes of

advertising or trade, (iv) without plaintiff's written consent."[67]

---

[67]     *Molina v. Phoenix Sound Inc.*, 747 N.Y.S.2d 227, 230 (1st Dep't 2002).
*Accord Cerasani v. Sony Corp.*, 991 F. Supp. 343, 356 (S.D.N.Y. 1998).

Under New York law, the statute of limitations begins to run upon the accrual of a claim,[68] and a tort claim "accrues upon the occurrence of the last event necessary to give rise to [such] claim, generally at the time of injury . . . ."[69] "The single publication rule, which holds that distribution of the offending publication gives rise to only one cause of action, applies to section 51 claims . . . ."[70] Further, "the statute of limitations [for Section 51 claims] begins to run the first time an offending item is published or distributed, but the limitations period is refreshed if an item is republished . . . [*i.e.*,] when a subsequent publication: (1) is intended for and reaches a new audience, or (2) materially changes or modifies the original."[71] Pursuant to New York Civil Practice Law and Rules § 215(3), an action for a violation of the right of privacy under Section 51 must be brought within one year of the claim's accrual.

### E.   Fraudulent Misrepresentation Under New York Law

---

[68]   *See Costanza v. Seinfeld*, 719 N.Y.S.2d 29, 31 (1st Dep't 2001).  *See also Britt v. Legal Aid Soc'y*, 718 N.Y.S.2d 264, 266 (2000).

[69]   *Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion GmbH & Co.*, 150 F. Supp. 2d 566, 572-573 (S.D.N.Y. 2001).

[70]   *Rostropovich v. Koch Intern. Corp.*, No. 94 Civ 2674, 1995 WL 104123, at *7 (S.D.N.Y. March 7, 1995) (citations omitted).

[71]   *Pearce v. Manhattan Ensemble Theater, Inc.*, No. 06 Civ. 1535, 2009 WL 3152127, at *8 n.8 (S.D.N.Y. Sept. 30, 2009).

The elements of a fraudulent misrepresentation claim under New York law are: "'(1) [that the] defendant made a material misrepresentation of fact; (2) that the misrepresentation was made intentionally in order to defraud or mislead the plaintiff; (3) that the plaintiff reasonably relied on the misrepresentation; [and] (4) that the plaintiff suffered damage as a result of its reliance on the defendant's misrepresentation.'"[72]

## V.   DISCUSSION

### A.   The Lanham Act Claim

Defendants argue that dismissal of this claim is warranted on the basis that Bondar is not a celebrity, and celebrity is needed to state a false endorsement claim under the Lanham Act.[73]  More precisely, defendants urge that the strength of Bondar's "mark" is too weak, as a matter of law, to cause consumer confusion, and

---

[72]   *Lenard v. Design Studio*, No. 08 Civ. 10560, 2012 WL 3642402, at *6 (S.D.N.Y. Aug. 24, 2012) (quoting *Harding v. Naseman*, No. 07 Civ. 8767, 2009 WL 1953041, at *20 (S.D.N.Y. July 8, 2009).

[73]   *See, e.g.*, Memorandum of Law in Support of Motion to Dismiss by Defendants LASplash Cosmetics and Jon Davler, Inc., USA for Judgment on the Pleadings and for Lack of Subject Matter Jurisdiction ("LASplash Mem.") at 11-12 ("Plaintiff's . . . false endorsement claim[] fail[s] as a matter of law because she cannot allege that . . . she is a celebrity with a trademark in her image"); Memorandum of Law in Support of Motion of Defendants David Byun and David Byun Creative, Inc. for Judgment on the Pleadings ("Byun Mem.") at 6 ("Bondar cannot prevail on her first cause of action, brought under Section 43(a) of the Lanham Act . . . because Bondar is not a celebrity.").

so her Lanham Act claim must be dismissed.[74]  Bondar's reply is that only a likelihood of consumer confusion, not high-wattage celebrity, is required to state a false endorsement claim, and that she has sufficiently alleged a likelihood of consumer confusion.[75]

Bondar has the better of the argument.  Section 43(a) prohibits any person from making a misrepresentation, in connection with an item in commerce, which is "likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . ."[76]  It does not require celebrity, only a likelihood of consumer confusion.  Of course, the misappropriation of a completely anonymous face could not form the basis for a false endorsement claim, because consumers would not infer that an unknown model was "endorsing" a product, as opposed to lending her image to a company

---

[74]    *See* Byun Mem. at 6-7.

[75]    *See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Fourth Amended Complaint ("Opp. Mem.") at 4-5.

[76]    15 U.S.C. § 1125(a).

for a fee.[77]  However, there is a level of consumer recognition short of celebrity –

as the term is usually understood – capable of causing consumer confusion.[78]

The strength of a mark is normally a question of fact,[79] and there is no

reason to depart from this practice here.  Bondar has alleged that she is "well

known" fashion model, who has appeared on catwalks for prestigious designers

and been featured in a number of popular fashion magazines.[80]  It is unlikely that

---

[77]     *See Ji v. Bose Corp.*, 538 F. Supp. 2d 349, 353 (D. Mass. 2008) (granting summary judgment to defendant on claim of unknown model whose image was used in advertisements for Bose speakers on the basis that plaintiff had not proven a likelihood of confusion).

[78]     *Compare Albert*, 1997 WL 323899, at *1 (dismissing plaintiff's false endorsement claim because plaintiff did not allege that he was "*well known or* a celebrity.") (emphasis added); *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 306 (D.N.H. 2008) (holding that plaintiff, a non-celebrity whose image was used in connection with advertisements for a casual sex website, stated a claim for false endorsement because "defendants' unauthorized use of a plaintiff's identity for marketing purposes [fell] directly within [the] language [of 15 U.S.C. § 1125(a)(1)(A)]") (quotation marks and citations omitted); *Hauf v. Life Extension Foundation*, 547 F. Supp. 2d 771, 777 (W.D. Mich. 2008) (denying defendant's motion to dismiss false endorsement claim on the grounds that non-celebrity cancer survivor "may be able to demonstrate notoriety among cancer patients or advocates of alternative medicine that is strong enough to have commercial value within the identifiable group") *with Uhlig LLC v. Shirley*, No. 6:08 Civ. 012082011, WL 1119548, at *6 (D.S.C. Mar. 25, 2011) ("Only celebrities have standing to assert a false association or endorsement claim under the Lanham Act.").

[79]     *See Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 384 (2d Cir. 2005).

[80]     *See* Compl. ¶¶ 16-17.

24

the public at large is familiar with Bondar.  However, it is possible that discovery will indicate that her mark is strong enough to cause a likelihood of consumer confusion.  For example, a survey could prove that the public is familiar with Bondar's face and believes that LASplash's ads imply her endorsement.  In short, the Complaint sufficiently alleges the strength of Bondar's mark to survive dismissal on the pleadings.[81]

### B.     Unfair Competition Under New York Law

The unfair competition claim is subject to the same analysis as the Lanham Act claim, except for the additional requirement of bad faith.  If true, the allegation in the complaint that "[LASplash] engaged in the unauthorized use of Bondar's images worldwide" in an attempt to trade on Bondar's mark would show bad faith on the part of defendants.[82]  Therefore, the unfair competition claim survives this motion.

### C.     Unjust Enrichment Under New York Law

---

[81]     Notably, all of the cases that defendants cite in opposition to this point involve a motion for summary judgment, save for *Albert v. Apex Fitness, Inc.*, in which the fact that plaintiff did not adequately allege that she was "well known" was decisive.  *See Albert*, 1997 WL 323899, at *1.  Because the Lanham Act claim survives this motion, I need not consider defendants' argument that the state law claims should be dismissed for lack of subject matter jurisdiction.

[82]     Compl. ¶ 20.

25

Common law right to privacy claims based on unauthorized use of a person's image, including unjust enrichment, are preempted by the NYCRL.[83] Therefore, Bondar's unjust enrichment claim is dismissed.

### D.    Right to Privacy Under NYCRL §§ 50-51

Defendants argue that Bondar's Section 51 claim is barred by the statute of limitations because the advertisements attached to LASplash's Answer were first published more than a year prior to the commencement of this action.[84] Bondar does not dispute that: (1) a one year statute of limitations applies to Section 51 claims; (2) such actions accrue upon the offending first publication; and (3) LASplash used her image in nationwide advertisements for lip gloss, eyeliner, and eye shadow more than one year prior to the commencement of this action. However, Bondar maintains that a separate claim accrued when LASplash used Bondar's image to advertise its product Enlightened Cream Shadow Base (a type of eye shadow base).[85]  Defendants' reply is that eye cream shadow is the same

---

[83]    *See Zoll*, 2004 WL 42260, at *4.  *See also Marshall v. Marshall*, No. 08 Civ. 1420, 2012 WL 1079550, at *20 (E.D.N.Y. March 30, 2012) ("New York does not recognize any right to publicity other than that created by Section 51.") (citing *Pirone*, 894 F.2d at 585).

[84]    *See* Byun Mem. at 11; LASplash Mem. at 9.

[85]    *See* Opp. Mem. at 9.

26

type as merchandise as eye shadow, meaning that any claim relating to eye shadow base is subsumed within the claim relating to eye shadow, and barred.[86]

In short, the question presented by the parties is whether eye shadow base is a separate type of product from eye shadow, giving rise to a new claim. If this were in fact the question at issue, it would be obvious that the dispute concerns a fact issue inappropriate for resolution through a judgment on the pleadings.[87] However, the attorneys for both sides misunderstand the law. A Section 51 claim accrues when all of its elements have been met, namely the usage of the plaintiff's picture, without consent, for the purposes of advertising or trade within the state of New York. Restated, if the circumstance elements are met, the claim accrues upon the use of the plaintiff's picture for the purposes of advertising or trade. The single publication rule applies, so the statute of limitation runs only once for each publication.

---

[86]     *See* Reply Memorandum of Law in Further Support of Motion to Dismiss by Defendants LASplash Cosmetics and Jon Davler, Inc., USA for Judgment on the Pleadings and for Lack of Subject Matter Jurisdiction ("LASplash Reply") at 4.

[87]     *Cf. Candelaria v. Spurlock*, No. 08 Civ. 1830, 2008 WL 2640471, at *5 (E.D.N.Y. July 3, 2008) ("Defendant also argues that the statute of limitations bars plaintiff's claims under NYCRL § 51. Plaintiff disputes this position on the basis that although the film was released in 2004, both in theaters and on DVD, it has subsequently been republished and altered from its original broadcast. However, the Court does not need to and in fact, may not even be able to reach this issue on defendant's motion to dismiss.").

*Rostropovich v. Koch Intern. Corp.*,[88] a case relied upon by both parties to show that each new product constitutes a republication,[89] is inapposite. In *Rostropovich*, the offending product and the alleged misappropriation of the musician Rostropovich's voice, name, and likeness were combined in one package, namely compact discs containing Rostropovich's performances.[90]   Furthermore, each disc contained a different performance by Rostropovich, raising the colorable inference that the first publication of each disc created a separate claim.   In consequence, an independent claim accrued upon the first publication of each disc. By contrast, the advertisements bearing Bondar's images are not combined with (or identical to) the offending products.   Bondar has not alleged, for example, that LASplash sold commemorative plates bearing her likeness.

In other words, Bondar's Section 51 claim, unlike the claim in *Rostropovich*, is that her image was misappropriated for use in advertising, not for use in trade.   The relevant inquiry is therefore whether LASplash's March 2011 use of Bondar's image in its advertising – fourteen months after their original use of

---

[88]   1995 WL 104123.

[89]   *See* Opp. Mem. at 9; LASplash Mem. at 9; Byun Mem. at 11.

[90]   *See Rostropovich*, 1995 WL 104123 at *1.  *See also Cuccioli*, 150 F. Supp. 2d at 573 ("As Judge Keenan held in *Rostropovich*, the statute of limitations runs separately as to each new product distributed with a name or image, *the use of which contravenes the statute*.") (emphasis added).

her image – was a republication, not whether LASplash's new product was a republication.  The republication exception applies when the subsequent publication: "(1) is intended for and reaches a new audience, *or* (2) materially changes or modifies the original."[91]  The question of whether the eye shadow base was a new product, then, is relevant only to the extent that it indicates that Bondar's photo was used to reach a new audience.[92]

For all intents and purposes, it appears that the target audiences of all of LASplash's advertisements were the same: consumers of cosmetics.  Moreover, the exhibits annexed to the Fourth Amended Complaint and LASplash's Verified Answer reveal that the same images of Bondar were used in March 2011 as had been used fourteen months earlier, with only minor alterations.[93]  Therefore, the March 2011 promotion did not constitute republication of Bondar's images, and judgment on the pleadings is granted as to this claim.

---

[91]   *Pearce*, 2009 WL 3152127 at *8 n.8

[92]   *See Zoll v. Jordache Enterprises Inc.*, No. 01 Civ. 1339, 2003 WL 1964054, at *2 (S.D.N.Y. Apr. 24, 2003) (holding that the re-airing of a 1978 jeans commercial in 2000 to promote a new brand of jeans did not constitute a republication for the purposes of model's Section 51 claim).

[93]   *Compare* ULTA Sell Sheet, Ex. E to LASplash Answer (allegedly depicting a promotional display featuring Bondar's image that was placed into various ULTA stores in 2010) *with* Social Media Promotion, Ex. B to Compl., at 7 (containing the same image of Bondar, but rotated).

**E.    Fraudulent Misrepresentation Under New York Law**

The only allegations in the complaint relating to the allegedly fraudulent statement are that: "Byun stated to David Kim [that] the Photo [S]hoot was[] 'a really small make up job for a friend of mine' consisting solely of testing for a product."[94]  The Complaint does not allege where this exchange took place, leading to the inference that it is a statement culled from the e-mail exchange attached to Byun's Answer.[95]  Furthermore, the assertion that the Photo Shoot was to consist solely of testing for a product is conclusory, and belied by the full context provided by the emails.[96]  Therefore, Bondar's fraudulent misrepresentation claim against Byun is dismissed for failure to allege with particularity the circumstances of the fraud.[97]

**F.    Leave to Amend**

---

[94]    Compl. ¶ 13.

[95]    *See* Byun-Kim E-Mails, Ex A. to Byun Answer, at 1.

[96]    *See id*.

[97]    *See, e.g., Rajbhandari v. Shah*, No. 02 Civ. 8778, 2006 WL 74393, at *6 (S.D.N.Y. Jan. 11, 2006) (dismissing fraud claim for failure to identify the allegedly fraudulent statements and their circumstances with the specificity required by Rule 9(b)).

Bondar has already amended her complaint three times, and there is nothing to suggest that further amendment would be anything but futile.[98]  Bondar surely realizes this, for she has not petitioned the Court for further leave to amend. Accordingly, leave to amend is denied as to all claims.

## VI.   CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings is: (1) granted as to Bondar's unjust enrichment, Section 51, and fraudulent misrepresentation claims; and (2) denied as to Bondar's Lanham Act and unfair competition claims.  Leave to amend is denied as to all claims. Defendants' motion to dismiss for lack of subject matter jurisdiction is denied. The Clerk of Court is directed to close these motions (Docket Nos. 41 and 44).  A conference is scheduled for December 19, 2012 at 11:00 a.m.

---

[98]    *See, e.g., Esposito v. New York*, 355 Fed. App'x 511, 513 (2d Cir. 2009) (affirming dismissal of claim without right to re-plead where "it would have been futile to give Appellant leave to amend her complaint because she had already amended it twice.") (citing *Hayden v. County of Nassau*, 180 F.3d 42, 53-54 (2d Cir. 1999)).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           December 11, 2012

**-Appearances-**

**Counsel for Plaintiff:**

Carlos M. Carvajal, Esq.
HARTMAN & ASSOCIATES
1515 Broadway, 11th Floor
New York, New York 10036
(212) 520-4296

**Counsel for Defendants:**

**David Byun and David Byun Creative, Inc.**

Richard De Palma, Esq.
Emily J. Mathieu, Esq.
Gabrielle Y. Vazquez, Esq.
THOMPSON HINE LLP
335 Madison Avenue, 12th Floor
New York, New York 10017
(212) 344-5680

**LASplash Cosmetics and Jon Davler, Inc.**

Alan F. Kaufman, Esq.
MCKENNA LONG & ALDRIDGE LLP
230 Park Avenue, Suite 1700
New York, New York 10169
(212) 905-8348